IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE MARTINEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:10-cv-01387 JLT<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CHARLENE MARTINEZ AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

  Charlene Martinez ("Plaintiff") asserts she is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") improperly rejected her subjective complaints of excess pain. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court remands this matter for further proceedings.

## **PROCEDURAL HISTORY**[1]

  Plaintiff filed an application for disability insurance benefits on September 12, 2006, alleging disability beginning August 25, 2004. AR at 135-37. The Social Security Administration denied her claim initially on January 11, 2007, and upon reconsideration on July 19, 2007. *Id.* at 66-69, 71-75. After requesting a hearing, Plaintiff testified before an ALJ on December 8, 2009. *Id.* at 10.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on March 5, 2010. AR at 10-18. Plaintiff requested a review by the Appeals Council of Social Security, which found no reason to change the ALJ's decision on May 21, 2010. *Id.* at 1-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for disability insurance benefits under Title II of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529.

A.   Relevant Medical Evidence

In 2003 and 2004, Plaintiff suffered pain in her knees, and had a right knee arthroscopy done on June 6, 2003.  AR at 220.  Dr. John Kofoed opined x-rays showed "advanced osteoarthritis of the medial compartment" on Plaintiff's right knee and "mild-to-moderate degenerative changes" in Plaintiff's left knee on March 1, 2004.  *Id.* at 262.  The arthroscopies on Plaintiff's right knee were "without much success," and cortisone and viscosupplementation injections provided "limited relief."  *Id.* at 214.  Further, Plaintiff suffered bouts of sciatica, for which Dr. Lewis Broschard referred Plaintiff to physical therapy in June 2004.  *Id.* at 214.

On August 25, 2004, Plaintiff "picked up several files and then had back pain" while at work.  AR at 256.  Plaintiff reported to Dr. Broschard that she noticed numbness in her right leg by the end of the day, and later noticed numbness in her left leg.  *Id.*  Plaintiff stayed home from work for a few days, and went to a doctor on September 1, 2004.  *Id.*  The doctor took Plaintiff off work for two weeks, and referred her to physical therapy.  *Id.*  On September 28, 2004, Dr. Broschard advised Plaintiff to stay off work for approximately three weeks to complete her physical therapy and not

aggravate her back by driving and working each day.  Following up with Plaintiff after her physical therapy on October 19, 2004, Dr. Broschard noted "improvement of may be (sic) a 50% in the degree and frequency of her back pain," and less sciatica.  *Id.* at 231.  However, an MRI of Plaintiff's spine in December 2004 showed "mild to moderate spinal canal stenosis at L4-5 and mild disc bulges at L3-4 and L5-S1.  *Id.* at 372.

Following her injury, Plaintiff was treated also by Dr. Steven Patwell, who opined Plaintiff had not returned to her pre-injury status in May 2005.  AR at 381.  Plaintiff received an injection from Dr. Rao, a neurosurgeon, in her back.  *Id.* at 273, 383.  Because Plaintiff reported an increase in pain, Dr. Patwell added Neurontin to her medications, which Plaintiff reported helped decrease the pain in her leg, and made her back "feel[] more like a burning sensation."  *Id.* at 379, 383.

Dr. Leonard Kalfuss examined Plaintiff on July 25, 2005, as a qualified medical evaluator.  AR at 287-321.  He observed Plaintiff "walked with a slight antalgic gait."  *Id.* at 293.  Plaintiff's cervical spine was "restricted approximately 50% of estimated normal, and tests on her dorsolumbar spines showed loss of range of motion from 25 to 60 percent.  *Id.* at 295.  According to Dr. Kalfuss, "Manual testing of the major muscle groups did not reveal any weakness."  *Id.* at 298.  Dr. Kalfuss diagnosed Plaintiff with the following impairments: myofascial referred pain syndrome from probable osteochondrosis/ discopathy in her cervical spine; chronic myofascial pain syndrome secondary to multilevel discopathy/spondylosis in her lumbosacral spine; chronic pain secondary to medial osteochondrosis, minimal, in her left knee; and chronic pain syndrome secondary to osteochondrosis (degenerative joint disease) in her right knee.  *Id.* at 303-04.  Dr. Kalfuss recommended limitations that required Plaintiff to "remain[] constantly immobile either seated or standing" for at least one hour, and then a five minute interval of alternating positions.  *Id.* at 310.  Further, Dr. Kalfuss believed Plaintiff could not lift more than forty pounds, run, jump, or engage in prolonged or repetitive squatting, kneeling, pivoting, climbing, or balancing.  *Id.* at 311.

On October 17, 2005, Plaintiff reported "ongoing pain, numbness, and diffuse achiness down through the right leg associated with her back pain."  AR at 362.  Dr. Patwell noted he had given Plaintiff an epidural on October 5, which gave Plaintiff "very good relief."  *Id.*  As a result of the epidural, Plaintiff reports she had an increase in functionality, and was able to stand up to 45 minutes

4

at time. *Id.* However, Dr. Patwell noted the second epidural "did not go as well," and in February 2006, Plaintiff reported constant pain and "significant flare ups," which Plaintiff described as "a burning, stabbing steady aggravating pain from the buttock down to the leg." *Id.* at 356. After an epidural injection on May 15, 2006, Plaintiff reported it helped her leg pain "about 33%," but it did not improve her back pain. *Id.* at 343. Therefore, Dr. Patwell recommended surgery. *Id.*

Dr. Gary Schneiderman performed a surgical consultation on July 18, 2006. AR at 404-08. Dr. Schneiderman reviewed Plaintiff's MRI scans and noted an MRI completed in June 2006 showed "the disc protrusion at L4-5 is considerably more prominent extending centrally and to the right, resulting in spinal stenosis and significant narrowing of the right lateral recess." *Id.* at 406. Also, Dr. Schneiderman observed "mild broad-based bulging at L5-S1." *Id.* Therefore, Dr. Schneiderman recommended "an L4-5 discectomy and decompression with a transforaminal lumbar interbody fusion procedure with instrumentation and bone graft." *Id.* at 408. The procedure was performed on September 27, 2006. *Id.* at 614.

Dr. Jamie Lewis completed a comprehensive orthopedic examination and evaluation of Plaintiff on December 13, 2006. AR at 555-62. Plaintiff reported constant pain across her lower back and in the anterior of her of thighs. *Id.* at 555. Prolonged walking aggravated her pain and caused burning paresthesia in her legs, which was relieved when Plaintiff rested. *Id.* Plaintiff reported the following impact on her activities of daily living:

> [S]he can walk about 15 minutes, stand for about 5-10 minutes and sit for 5-10 minutes. She can drive a car [and] wash dishes, but has difficulty sweeping, vacuuming, taking out the garbage and doing yard work secondary to pain. She can fix meals, bathe herself, dress herself, and feed herself. She is able to use a computer, read, [and] use the telephone. . .

*Id.* Dr. Lewis noted Plaintiff was able ambulate without an assistive device, though Plaintiff reported occasional use of a cane. *Id.* at 555, 558. Dr. Lewis observed Plaintiff had swelling in her lower extremities, but her gait was non-antalgic and her stride was normal. *Id.* at 558. Plaintiff had difficulty performing a deep knee bend, and reported a significant increase in low back pain. *Id.* Her reflexes were normal and her strength was 5/5 in all areas, with the exception of extension of her right knee because Plaintiff "reported significant pain reproduction." *Id.* at 560-61. Following the examination, Dr. Lewis concluded Plaintiff had the ability to stand and walk for about "4-6

noncontinuous hours;" sit for at least six noncontinuous hours; frequently lift and carry up to ten pounds and occasionally twenty pounds; and occasionally bend, push, and pull. *Id.* at 561-62. In addition, Dr. Lewis believed Plaintiff could "benefit from an environment where she can alternate sitting and standing" and from the use of a cane when walking distances or on uneven terrain. *Id.*

Dr. C.R. Dann reviewed Plaintiff's medical records and completed a physical residual functional capacity assessment on January 9, 2007. AR at 563-68. Dr. Dann determined Plaintiff had the ability to: frequently lift and carry ten pounds and occasionally twenty pounds; stand or walk for at least two hours in an eight-hour day; sit for about six hours in an eight-hour day; and occasionally climb ramps or stars, balance, stoop, kneel, crouch, and crawl. *Id.* at 564-66. Plaintiff had limited ability to push and pull in her lower extremities, and could never climb ladders, ropes, or scaffolds. *Id.* She had no further limitations. *Id.* at 566-67. According to Dr. Dann, Plaintiff was partially credible, but the examination and diagnosing imaging findings "do not fully support the degree of impairment alleged." *Id.* at 568.

Throughout 2007, Plaintiff continued to receive treatment from Dr. Patwell and follow-up with Dr. Schneiderman. Plaintiff reported she was doing "much better" after the surgery, and was "pleased with the result." AR at 602, 652. She was considered permanent and stationary, and Dr. Schneiderman instructed Plaintiff "to return to activities as tolerated." *Id.* In April 2007, Dr. Patwell noted Plaintiff had "very restricted range of motion," and continued to have back and leg pain "[b]asically related to activity level." *Id.* at 652. After Dr. Kalfuss examined Plaintiff again in May 2007, he concluded Plaintiff had the ability to sit or stand for two hours at a time, and could lift up to fifty pounds. *Id.* at 781-82.

Dr. Patwell completed a physical residual functional capacity questionnaire on October 2, 2008. AR at 588-92. Dr. Patwell stated Plaintiff had permanent back pain and a discopathy, which resulted in "chronic pain, buttocks sciatica, [and] leg numbness." *Id.* at 588. He believed Plaintiff's pain was severe enough to occasionally interfere with her attention and concentration, and indicated Plaintiff was capable of low stress work. *Id.* at 589. Dr. Patwell opined Plaintiff had the ability to sit, stand, or walk for thirty minutes at one time and could sit or stand/walk for about four hours each in an eight-hour day. *Id.* at 589-90. Also, Plaintiff needed a break every twenty minutes to walk. *Id.*

at 590. Dr. Patwell believed Plaintiff had the ability to frequently lift and carry less than ten pounds, occasionally lift ten pounds, and rarely lift twenty pounds. *Id.*

In 2008, Plaintiff's right knee pain increased, and she walked with a forward flexed position and severe limp. *See, e.g.,* AR at 597, 599. As a result, Plaintiff had a total right knee replacement on November 19, 2008, performed by Dr. Robert Ching. *Id.* at 826. Dr. Ching noted Plaintiff had severe degenerative joint disease in her right knee, and continued to suffer chronic low back pain. *Id.* Following her surgery, Plaintiff had twenty-eight physical therapy sessions, and reported pain as much as a four on a scale of 10, in her right knee. *Id.* at 817, 818, 820. On January 7, 2009, Dr. Ching noted Plaintiff had the ability to "ambulate up to 30" shopping without consequences," but if she walked distances, Plaintiff had a deviated gait pattern. *Id.* at 820. By March 2009, Plaintiff's walking was "[within normal limits] on level and uneven surfaces, without equipment." *Id.* at 817. At that time, Dr. Ching noted Plaintiff "made steady gains although most limited by chronic [low back pain]. *Id.* Plaintiff did not take medication for her knee pain because she used the medication for her low back pain. *Id.*

B.   Hearing Testimony

*Plaintiff's Testimony*

Plaintiff testified before an ALJ on December 8, 2009. AR at 23. Plaintiff reported that she had completed high school and a couple of college courses, but did not earn a degree. *Id.* at 26. She said she had spent the last twenty-five years of her working life with Carpenter's Trust Funds, where she last worked in June 2005. *Id.* at 27, 29. Plaintiff stated she began as a clerk in the pension department for the company, and moved through positions including supervisor, and assistant manager, before she became the benefits manager. *Id.* at 27-28. When she held the position as benefits manager, thirty-five employees reported to her, and Plaintiff "ran a department that paid benefits to carpenters for their pensions, annuities, and established their eligibility for health and welfare." *Id.* Plaintiff stated she stopped working due to her back injury, but she suffered also from knee pain, carpal tunnel in her left hand, and high blood pressure. *Id.* at 29-30, 41.

According to Plaintiff, in August 2004 she injured her lower back and received workers' compensation for the injury. AR at 28. Plaintiff said she had fusion surgery on her "lower back, L5"

but continued to suffer problems including: pain in her lower back, sharp pain through the buttocks area several times a week, "a little restlessness in [her] legs," and her feet feel asleep "every once in a while." *Id.* at 34-35.

Plaintiff said driving long distances or walking "in excess of between seven to ten minutes" caused her back "to get inflamed" and her legs to hurt. *Id.* at 36. Also, Plaintiff said she could tolerate sitting in a regular chair for about ten minutes before she got restless and wanted to lay down somewhere. *Id.* at 37. Plaintiff reported lifting anything over ten pounds aggravated her back, and she could only lift a gallon of milk when she "use[d] both hands and the knees and do what you're supposed to do for lifting." *Id.* Further, Plaintiff testified her pain caused her to get up "at least two or three times" each night "just to change the positions for [her] back. *Id.* at 38. Plaintiff confirmed she took pain medication for her back that reduced or relieved some of these symptoms, and which helped her go back to sleep. *Id.* at 35, 38.

Plaintiff testified she had problems with both of her knees. AR at 29-30. Plaintiff reported walking seven to ten minutes or standing for more than five to ten minutes caused her knees to hurt. *Id.* at 39-40. Plaintiff anticipated that she would have surgery sometime within a year of the hearing on her left knee because her knee had been buckling for several months and caused her to trip. *Id.* at 30-32. For this reason, Plaintiff said she began to use a cane, which she used at the hearing. *Id.* at 30-31. Also, Plaintiff stated she had a total knee replacement surgery in November 2008 on her right knee, which she said was "very stiff" and prevented her from kneeling. *Id.* at 30. Plaintiff said she experienced numbness and pain in her right knee that did not occur all the time, "but enough to irritate [her]." *Id.* at 33. Plaintiff reported the pain medication for her back relieved the symptoms in her right knee "[a]t times." *Id.*

In addition, Plaintiff testified she had carpal tunnel in her left hand, and a doctor prescribed a brace for her to wear due to the symptoms in her arm and wrist. AR at 30, 40. Plaintiff reported that she wore the brace "[m]ost of the time," including at night when she slept. *Id.* at 41. She believed her carpal tunnel syndrome affected her ability to grip items. *Id.*

///

///

8

*Vocational Expert Testimony*

Vocational expert ("VE") Tom Reid testified after Plaintiff. The VE characterized Plaintiff's past work as a benefits manager, DOT 166.167-018, as follows:

> The skill level is 7. The exertional level is sedentary with occasional requirements for reaching, frequent requirements for handling, and occasional requirements for fingering. There are temperamental requirements involving adaptability to directing, controlling or planning the activities of others, to attending precise set limits, tolerances, and standards, to dealing with people, and making judgments and decision[s].

AR at 47. The VE noted that, based on how Plaintiff described her work, the exertional requirements fell within the medium range. *Id.* However, the position was described as sedentary work in the DOT and "Employment Occupational Quarterly." *Id.* at 47-48. Therefore, the VE opined that if Plaintiff were able to perform sedentary work, she would be capable of performing the "past work as its (sic) generally performed in the national economy." *Id.* at 48. Further, the VE observed that, as described by the DOT, there was not many jobs that were less physically demanding than Plaintiff's past work as a benefits manager. *Id.*

The ALJ asked the VE to consider an individual based upon the assessment of Dr. Lewis, a Social Security orthopedic specialist. AR at 48, 555. The individual who could occasionally lift twenty pounds, stand or walk for up to four to six hours in an eight-hour day, and sit for up to six hours in an eight-hour day. *Id.* at 48-49. Also, the individual "might benefit from the opportunity to alternate to sitting and to standing." *Id.* at 49. The VE opined such a person could perform Plaintiff's past work. *Id.*

The second hypothetical was based upon the assessment of Dr. Kalfuss, an examining physician. AR at 49. The ALJ asked the VE to consider an individual who "should perform no prolonged or repetitive end range of motion with rotation and twisting constantly exceeding two minutes at one time or intermittently four hours during an eight-hour workday." *Id.* Also, the individual "should not remain immobile either sitting or standing exceeding two hours at one time." *Id.* The VE concluded such a person could perform Plaintiff's past work because "[t]here ordinarily would be no requirement that she be immobile for a definite period of time." *Id.* Also, the VE observed there is no limitation regarding twisting in the DOT or the classification of jobs. *Id.*

The ALJ based his third question on the assessment of Dr. Patwell, Plaintiff's treating physician. AR at 49. The individual was able to lift ten pounds, sit for up to four hours in an eight-hour day, and stand for up to four hours in a day. *Id.* at 50. However, the person "would be required to alternate sitting and standing at approximately 30-minute intervals." *Id.* The VE opined the person was capable of performing Plaintiff's past work, though there was a possibility of "some difficulty" if the position required considerable travel, because the half-hour increments "might have some effect of disrupting her work function." *Id.*

When the ALJ changed the sitting or standing tolerance of only fifteen minutes increments, the VE believed that such a restriction would significantly interfere with production and an individual was "very borderline" to not being able to perform the work required. *Id.* at 50-51. Also, the VE stated that in spite of being "highly skilled," the worker would not be able to perform any other because of "the potential for such an ongoing disruption of work activity." *Id.* at 52.

Plaintiff's counsel posed hypothetical questions to the VE asked the VE to consider the ALJ's last hypothetical but adding a limitation that the individual did not have the ability to walk a city block. AR at 52-53. The VE opined the individual would not be able to perform Plaintiff's past work as she performed it, but could perform the work as it existed in the general labor market where the position was defined as sedentary work "because there's ordinarily not an expectation or requirement for more than incident[al] walking for sedentary work." *Id.* at 53.

The VE stated no work would be available if an individual needed to take a break every twenty minutes to rest by walking for fifteen minutes. AR at 54. If the break requirement was that the individual needed unscheduled breaks, about ten minutes every two hours, the VE believed Plaintiff's past work could be performed because "a person in a managerial position [has] considerable control over their own piece of work." *Id.* at 55-56.

C.   The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff engaged in substantial gainful activity until July 1, 2005, though the alleged onset date was August 25, 2004. AR at 12. Therefore, the ALJ considered the period after July 1, 2005 in his disability determination. *Id.* Second, the ALJ

found Plaintiff has the following severe impairments: "back and knee osteoarthritis, high blood pressure and obesity." *Id.* at 13. These impairments did not meet or medically equal a listing. *Id.* The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. AR at 13. Plaintiff could "occasionally lift/carry 20 pounds and is able to sit for six of eight hours. . . [but] require[d] the option to sit and stand every 30 minutes." *Id*. With this RFC, the ALJ concluded Plaintiff was capable of performing her past relevant work as a benefits manager. *Id.* at 17. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 18.

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ failed to properly evaluate her excess pain. (Doc. 15 at 8). According to Plaintiff, "The medical evidence demonstrates the existence of significant medically determinable impairments affecting the ability to perform the exertional and nonexertional requirements of work activity. The question is not the presence of limitations but the extent of those limitations." *Id.* Plaintiff asserts that though the ALJ addressed her testimony, he failed to state clear and convincing reasons for rejecting her subjective complaints. *Id.* at 11.

On the other hand, Defendant argues the ALJ provided valid reasons for finding Plaintiff's testimony was not fully credible. (Doc. 17 at 8). According to Defendant, "the ALJ explained that the objective medical evidence did not support Plaintiff's alleged limitations." *Id.* at 8-9. In addition, the Defendant argues the ALJ considered Plaintiff's daily activities.[2] *Id.* at 9-10. Therefore, the Defendant concludes, "the ALJ provided good reasons supported by substantial evidence in the record for finding that Plaintiff's testimony was not credible." *Id.* at 12.

///
///
///

---

[2] Though Defendant alleges the ALJ considered the treatment Plaintiff received, the ALJ discussed only Plaintiff's surgeries, and failed to address treatment such as her epidural injections. Because the ALJ failed to specifically address Plaintiff's treatments for her impairments, or articulate how the treatments undermined her credibility, the Court cannot consider Defendant's post hoc reasoning. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts").

A. The ALJ failed to set forth clear and convincing reasons for rejecting Plaintiff's testimony of excess pain.[3]

In assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citation omitted). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 15. However, the ALJ believed Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." *Id.* Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Importantly, in 1984, Congress amended the statutes governing disability do address allegations of pain. *See Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991); 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488 n.4 (9th Cir. 1986). The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence. *Id.; see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that

---

[3] Excess pain is defined as "pain that is unsupported by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986).

it is not fully corroborated by objective medical evidence"); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony"). Here, the ALJ considered Plaintiff's daily activities and the objective medical evidence, which are relevant factors in a credibility determination. *See Rollins*, 261 F.3d at 857 (medical evidence "is a factor that the ALJ can consider in his credibility determination); *Fair*, 885 F.2d at 603 ("testimony about the claimant's daily activities" may be relied upon to find a pain allegation incredible).

*Activities of daily living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603. For example, a claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*, 400 F.3d at 680 (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…"). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding relating to the transferability of the activities to a workplace to refute a Plaintiff's allegations of disability. *Orn v Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ noted Plaintiff "continues to drive and walk her dog. She does some gardening as a hobby. She carries small loads of grocery bags, her dog and the laundry." AR at 15. However, the ALJ failed to find Plaintiff's limited activities could be transferred to a work setting, or that Plaintiff spent a "substantial" part of her day engaged in such activities. *See Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work

setting). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, Plaintiff's activities of daily living do not constitute a clear and convincing reason to discount her testimony of excess pain.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). However, in citing to the medical evidence as part of a credibility determination, it is insufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). Plaintiff testified that she suffered pain in her back and both knees, and that walking seven to ten minutes or standing for more than five to ten minutes caused her knees to hurt. *See* AR at 29-30, 39-40. The ALJ noted generally that Plaintiff suffered "back and leg pain associated with a back injury," and "the evidence indicates that the claimant does experience some lingering discomfort, but is able to move about in a satisfactory manner." *Id.* at 15. Because the ALJ failed to specify which portions of Plaintiff's testimony were not credible and to identify the medical evidence refuting the testimony, the ALJ has not met his burden.

Furthermore, even if the Court were to find the ALJ met his burden to specifically identify the medical evidence that refutes Plaintiff's subjective complaints, the medical record alone is not a clear and convincing reason to reject Plaintiff's testimony. As a result, the ALJ's adverse credibility

determination was insufficient, because he failed to set forth clear and convincing reasons supported by substantial evidence in the record.

B.  Remand is appropriate in this matter.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). Also, the Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony could be credited as true, and remand is not appropriate. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Notably, though the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff

would be disabled if her testimony were credited as true.  When asked a hypothetical question based upon Plaintiff's limitations, the VE opined it is "very borderline" that Plaintiff would have the ability to perform her past relevant work.  AR at 51.  Based upon this assessment, the Court is unable to determine whether Plaintiff would be disabled, and remand is appropriate for this matter.

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ erred in assessing Plaintiff's credibility as related to her subjective complaints of excess pain.  Therefore, the Court will order the matter remanded for the ALJ to provide sufficient findings related to the medical evidence of record, and to determine whether Plaintiffs limitations preclude her from her past relevant work, as she performed it or as it is generally performed in the national economy.

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
2. The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff Charlene Martinez and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 31, 2011**                                   /s/ **Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE